Connolly, Thomas E., J.

INTRODUCnON

The plaintiff, City of Attleboro (“Attleboro”), brought this action seeking judicial review of decisions made by the defendant, the Board of Education and the Department of Education of the Commonwealth of Massachusetts (collectively, “the Board”). Attleboro alleges that the Board violated statutory language in denying Attleboro reimbursement of certain interest costs for the construction of school pr oj ects under the School Building Assistance Program.[2] The Massachusetts School Building Authority (MSBA) is now responsible for many of the projects that were approved by the Board prior to the enactment of Chapter 208, including the Attleboro projects. As a result, the MSBA and its Executive Director, Katherine Craven, were substituted as defendants in this matter. This case is currently before the court on Attleboro’s motion for judgment on the pleadings and the MSBA’s cross motion for judgment on the pleadings. After hearing, and upon review and consideration, Attleboro’s motion on the pleadings is DENIED and the MSBA’s motion on the pleadings is ALLOWED. The complaint is dismissed with prejudice.

BACKGROUND

In 1992 and 1995, Attleboro applied for state grants under the School Building Assistance Program (“SBAP”) for three school construction projects (the Studley Middle School, the Wamsutta School, and the Peter Thatcher Middle School). In 1994, the Board granted approval for two of the projects: the Studley Middle School project and the Wamsutta School project. The Peter Thatcher Middle School was approved in 1996. Following approval of the grants, Attleboro issued short-term debt in the form of bond anticipation notes (“BANs”) in order to provide initial financing of construction costs for the three school construction projects. Attleboro proceeded to issue long-term debt to pay off the BANs and to provide long-term financing for the projects. At the completion of construction, Attleboro submitted a Cost Estimate and Plan for Financing for each of the approved school projects. In order to determine final SBAP grant amounts, the Board conducted audits on Attleboro’s completed school construction projects. The audit process was designed, in part, to reconcile the estimated costs provided by the city with actual costs. When determining final grant amounts, the Board excluded a portion of interest on the short-term BANs issued by Attleboro. In declining certain interest costs, the Board claimed that Attleboro had violated Board policy by issuing additional BANs after receiving state grant payments instead of making level principal payments on outstanding debt.
In January 2002, Attleboro timely appealed the Board’s decision to disallow certain BAN interest. Besides making a few modifications to prior short-term interest calculations and approved construction costs, the Board upheld its original determination to exclude a portion of the BAN interest. As a result of the exclusion of certain interest costs, Attleboro filed this action against the Board in March 2003.

*160
DISCUSSION

A.Standard of Review

A motion for judgment on the pleadings is a “challenge to the legal sufficiency of the complaint.” Minaya v. Massachusetts Credit Union Share Ins. Corp., 392 Mass 904, 905 (1984). When ruling on the merits of such a motion, all facts pleaded by the non-moving party must be accepted as true. Id. If it is determined that a material fact is in dispute between the moving party and the non-moving party, the motion for judgment on the pleadings must be denied. Canter v. Planning Bd. of Westborough, 7 Mass.App.Ct. 805, 808-09 (1979). In the case before the court, material facts are not at issue.

B.Judicial Review

Pursuant to G.L.c. 249, §4, Attleboro seeks judicial review of the decision of the Board to disallow certain BAN interest incurred on approved school construction projects in Attleboro. In order to pursue review under G.L.c. 249, §4, a party must demonstrate the existence of “1) a judicial or quasi judicial proceeding; (2) a lack of all other reasonably adequate remedies; and (3) a substantial injury or injustice arising from the proceeding under review.” Boston Edison Co. v. Board of Selectmen of Concord, 355 Mass. 79, 83 (1968). Attleboro’s effort to seek judicial review must fail as the Board’s determination to disallow certain interest costs was not the product of a judicial or quasi judicial proceeding but rather a discretionary administrative action. See School Committee of Hatfield v. Board of Education, 372 Mass. 513, 516-17 (1977) (holding that the determination of eligibility for school construction grants was a matter of board discretion, properly within the expertise of an administrative agency and therefore outside the ambit of judicial review); see also First Church of Christ, Scientist, in Boston v. Alcoholic Beverages Control Commission, 349 Mass. 273, 274 (1965). In this case, under the applicable statute, the Board is to consider the “best interests” of the Commonwealth in determining whether to approve a grant for school construction. G.L.c. 70 App, §l-8(a) (“Forthwith upon receipt of an application under the provisions of section seven, the board shall examine such application and any facts, estimates or other information relative thereto, and shall determine whether the proposed construction is in the best interests of the commonwealth ... If, in its opinion, such proposed construction should be undertaken, the board shall determine the estimated approved cost of such construction . . .”). The language cited only underscores the discretion afforded to the Board in making such decisions. Such discretion necessarily precludes any claim that the Board was acting pursuant to a judicial or quasi judicial proceeding.
Pursuant to G.L.c. 231 A, Attleboro also seeks declaratory relief. However, the discretionary nature of the decision, again, prevents judicial review. School Committee of Hatfield, 372 Mass. at 516-17. Similarly, mandamus is not available to compel performance of an act that is discretionary in nature. See Urban Transport, Inc. v. Mayor of Boston, 373 Mass. 693, 698 (1977).

C.Discretion of the Board/Massachusetts School Building Authority

Attleboro claims that by disallowing certain interest costs on BANs, the Board ignored clear and unambiguous statutory language that requires inclusion of “the entire interest paid or payable by such city, town or regional school district on any bonds or notes issued to finance such project . . .” G.L.c. 70 App., §l-7(a). However, such an interpretation only succeeds if the language is read in isolation. A review of the language found in the very next section of the legislation states that the Board “. . . shall determine whether the proposed construction is in the best interests of the commonwealth and the city, town or regional school district with respect to its site, type of construction, sufficiency of accommodations, and otherwise.” G.L.c. 70 App., §l-8(a). Not only does the Board have the discretion to determine whether to approve a grant, it also has the discretion to determine the estimated approved cost of the construction on which the grant is based. G.L.c. 70 App., §l-8(a) (“If, in its opinion, such proposed construction should be undertaken, the board shall determine the estimated approved cost of such construction, which cost may be equal to the estimated cost furnished by such city, town, or regional school district or a lesser amount . . .”). It does not logically follow that the Board has the discretion to determine whether to approve a grant application and the amount of a grant, yet has no authority to determine whether interest costs should be included in that grant.
Within the proper context and read in conjunction with the legislation as a whole, the Board contends that §1-7 should be read to address application requirements. Although we generally defer to an agency’s interpretation of a statute that it is charged with administering, an “incorrect interpretation of a statute ... is not entitled to deference.” Atlanticare Med. Ctr. v. Comm’r of the Div. of Medical Assistance, 439 Mass. 1, 5-6 (2003), citing Massachusetts Hosp. Ass’n v. Department of Medical Sec., 412 Mass. 340, 345-46 (1992); Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 646 (2000). Here, however, the Board comports with standard statutory construction. Instead of looking at the provisions individually, the Board construed the statute in a way that is consistent with the legislative purpose as a whole. Dowell v. Commissioner of Transitional Assistance, 424 Mass. 610, 613 (1997) (“Provisions of legislation addressing similar subject matter are to be construed together *161 to make an harmonious whole consistent with the legislative purpose . . .”). See also Teletsky v. Wight, 395 Mass. 868, 873 (1985) (“A statute should be read as a whole to produce an internal consistency”). The language in §1-7 concerns the requirements and contents of the applications for school construction grants. While § 1-7 requires a city, town or regional school district to include the entire interest cost in its application, there is no accompanying language that requires the Board to accept such costs. Providing the Board such broad discretion regarding the decision whether to award a grant and the amount of that grant while negating its role in determining financing costs does not mesh and does not “produce an internal consistency.” Teletsky, 395 Mass. at 873. As a result, the Board’s interpretation should be granted substantial deference as it has been established that a state administrative agency is granted a great deal of leeway “in interpreting a statute it is charged with enforcing.” Berrios v. Dept of Public Welfare, 411 Mass. 587, 595 (1992).
In addition to its claims under Chapter 645 of the Acts of 1948, Attleboro amended its complaint to assert that Chapter 208, §47(b) of the Acts of 2004 provides an additional basis for the claim that statutory language explicitly requires the MSBA to reimburse Attleboro for all interest costs incurred in connection with the school construction projects (§47(b) reads, in part, “[f)or projects which prior to July 1, 2004 were approved by the board of education . . . approved costs shall include the entire interest payable on any indebtedness incurred to finance the projects . . .”). St. 2004, c. 208, §47(b). However, such an interpretation only works by dismissing the language set forth in §48 of Chapter 208 and the statutoiy scheme of Chapter 208 as a whole.
According to the language in §48 of Chapter 208, if a final audit has been completed as of the effective date of Chapter 208 and substantial new information has become available, the audit may be reviewed and approved costs adjusted at the request of a city, town, regional school district or independent agricultural and technical school. St. 2004, c. 208, §48. Here, the final audits for the Attleboro school construction projects had been approved at the time of the effective date of Chapter 208. However, Attleboro did not offer any evidence to indicate that any substantial new information had arisen regarding the three school construction projects in Attleboro. As a result, Chapter 208, §47 cannot be read to require the MSBA to review or revisit the decision to disallow certain interest costs.
Additionally, Attleboro’s interpretation of §47(b) cannot be reconciled with the overall statutory purpose of Chapter 208. Acting Superintendent of Bournewood Hosp. v. Baker, 431 Mass. 101, 104 (2000) (“As a general rule, a statute must be construed ‘according to the intent of the Legislature ascertained from all its words construed by the ordinaiy and approved usage of the language, considered in connection with the cause of its enactment’ ”). The language of the legislation points to an intent to create abuilding assistance program thatpromotes “positive educational outcomes” in amanner that is “financially sustainable!].” St. 2004, c. 208, §1. While the school building assistance program is designed to reimburse cities and towns for eligible costs, that reimbursement amounts to a percentage of costs. There is no indication that this program was created to cover all construction costs. Pursuant to §30 of Chapter 208, percentage grants shall be no greater than 90% of eligible costs. Therefore, the argument that Chapter 208 requires reimbursement of all interest costs runs counter to the statutoiy purpose of Chapter 208 as a whole and necessarily must fail.

D. Arbitrary and Capricious

The Board did not exercise its discretion in an arbitrary and capricious manner. Attleboro’s arbitrary and capricious claim is based upon the allegation that the Board forwarded three separate explanations of the determination to exclude certain BAN interest costs. Attleboro alleges that the explanations were inconsistent and, as a result, the Board acted in an arbitrary and capricious manner. Additionally, Attleboro alleges that the different versions of its policy were not applied properly. As noted above, the Board is afforded a great deal of discretion in this area. An action of the Board must therefore be overturned only if it “lacks any rational explanation that reasonable minds might support.” Doe v. Superintendent of Schools of Stoughton, 437 Mass. 1, 6 (2002). While it is troubling that the Board articulated its rationale in a somewhat obtuse manner, such communication does not reflect a decision that was without merit or logic.

ORDER

For the foregoing reasons, it is therefore ORDERED that plaintiffs motion for judgment on the pleadings be DENIED. It is further ORDERED that defendant’s motion for judgment on the pleadings be ALLOWED and that defendant’s motion to dismiss with prejudice be ALLOWED.

 In July 2004, legislation (Chapter 208 of the Acts of2004) was enacted that created the Massachusetts School Building Authority (MSBA). Chapter 208 transferred all authority for the School Building Assistance Program to the MSBA.